Clonan *v.* Allegheny Valley Street Railway
Company, Appellant.

Argued April 22, 1929.

Before
Porter, P. J., Trexler, Keller, Linn, Gawthrop,
Cunningham and Baldrige, JJ.

*W. A. Challener*, and with him *W. A. Challener, Jr.*,
for appellant.

*Leo J. Ritter,* and with him *Charles G. Notari* and *Marshall & Marshall,* for appellee.

OPINION BY GAWTHROP, J., July 2, 1929:

Plaintiff recovered a verdict and judgment in the court below for damages resulting from injuries sustained in a collision between the automobile in which he was riding and one of defendant's cars on a public highway. He sought to fasten liability upon defendant because, as the statement of claim alleges, when the automobile "reached the point at which they had to cross the single track of the defendant ......, the servants of the defendant, in the performance of their duties as such, negligently threw on a blinding headlight of great brilliance on a street car that was standing on said track on the side of the road next to the car barns, which said headlight on the street car blinded the driver of said automobile ...... and it came into collision with the street car."

Defendant appeals to us to set aside the recovery against it on the ground that the evidence fails to establish its negligence.

The accident happened on the Freeport Road, an improved concrete highway, running north and south, on which defendant operates a single track interurban trolley line. On the west side of the road, at the point where the accident happened, defendant maintains a car barn one hundred and two feet in length along the highway. To the south of the north end of the car barn defendant's track occupies the west side of the highway. At that point it crosses the highway to the east side thereof and continues north on that side of the highway. Plaintiff occupied the right front seat. The trolley car, headed north, was standing on the west side of the highway, opposite the car barn, just south of the point where the track starts to curve across the highway. Plaintiff testified that he was

familiar with the road; that when the automobile, going south, got within about thirty-five feet of the car the "big brilliant light flared up in front of us ...... It just appeared as though it was coming toward us. It got us confused. There was a rail there and a drop in the rail and it was unpaved and it seemed it took the wheel out of Mr. Hazlett's hand and ran up on the side of the building. Q. What part of the road had you occupied just before this occurred? A. We were keeping probably to the right on the other side of the car track, just like approaching the car track. Q. You said it appeared that the car came towards you; did it, or not? A. Yes sir, the car actually moved. Q. Tell us what speed it came toward you? A. I can't say it came any speed at all; it just about moved, and this brilliant light which sort of took the road away from him. Q. At that point is it necessary to cross the track or in any way to follow the Freeport Road? A. Yes sir, you have to go on the track in order to go on down the road. Q. On the left hand side of that barn looking toward Pittsburgh, how much road is there to use for automobiles and how is that road taken up? A. Do you mean along the side of the track. Q. Along side of the barn? A. I would say about a twenty foot road. Q. And between the street car and barn is there any place where automobiles can drive? A. No, it is unpaved there." He testified further that after the light on the trolley car was turned on they travelled about thirty-five feet and the collision occurred at a point about opposite the middle of the car barn. When asked how far the trolley car travelled before the collision he said, "Not over a couple of feet." The driver testified that he saw the trolley car when he was two hundred feet from it, but the headlight was turned on when he was about thirty-five feet from it.

It is manifest from this evidence that the slight

movement of the trolley car had no connection with the accident, and that the collision resulted from the driving of the automobile into the trolley car. Viewing the evidence in the light most favorable to plaintiff, we are of one mind that it fails to establish any negligence on the part of defendant. As there is neither allegation nor proof that the light was brighter or more powerful than is ordinarily used on this line of railway, or on other interurban lines, and the appellee asserts in his brief that "it is not with the type of headlight that appellee finds fault, but with the use of such headlight under the circumstances of the case," the simple question is, whether it was negligence to turn on the light when it would flash suddenly and without warning, into the eyes of travellers closely approaching it on the highway from the north. In our view the case is not different in principle from that in which the headlight of a trolley car running on a track along a highway suddenly flashes into the eyes of approaching travellers by reason of a curve in the road. The result to the sight of the traveller on the highway would be the same in that case as in this.

In Spoatea v. Berkshire Street Ry. Co., 212 Mass. 599, 99 N. E. 467, plaintiff sued defendant for injuries sustained when a light on one of defendant's cars so blinded him that he collided with a team on the street as he turned the corner on his bicycle. It appeared that the light was the same as that ordinarily in use. The street was wide and the car tracks were on the side of the street and there was ample room to pass without a collision, but for the blinding effect of the light. It was held in an opinion by Chief Justice Rugg that the evidence failed to show any negligence on the part of the defendant in the character or management of the light.

In Daigneau v. Worcester Street Ry. Co., 231 Mass. 166, 120 N. E. 400, plaintiff, an intending passenger, be-

came blinded by the headlight of an approaching street car which she intended to take, and stood too close to the tracks and was hit by the overhang of the running boards. A verdict directed for defendant was affirmed. The Supreme Judicial Court stated that it was not evidence of negligence if the car carried a powerful headlight whose rays had a tendency to blind the sight of the plaintiff as it approached the point where he was standing; and that it is a matter of common knowledge that such headlights are in general use, under similar circumstances, upon electric street cars at night.

While these authorities are not binding upon us, we are impressed by their reasoning and conclusion. That it was the duty of defendant to equip its cars with sufficient headlights and use them is indisputable. If a motorman may not turn on the ordinary headlight of a car standing on a track on a public highway, while automobiles are closely approaching in the night time, without the risk of subjecting his company to liability for negligence, it would follow that he could not safely turn it on at all and start his car on a much used highway upon which automobiles are constantly approaching, unless he first sent out a representative to warn travellers approaching on the highway that the headlight on the car was about to be turned on. Our conclusion is that a jury cannot be permitted to say that the turning on of the headlight, even if it was the proximate cause of the injury, was negligence; and that the trial judge should have directed a verdict for defendant.

The assignments of error complaining of the refusal of defendant's point for binding instructions and the refusal of a motion for judgment non obstante veredicto are sustained, and the judgment is reversed and here entered for defendant.